IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

William E. Smith,                    :

                Plaintiff,        :  Case No. 2:15-cv-1264

    v.                               :  JUDGE MICHAEL H. WATSON
                              Magistrate Judge Kemp
Gary Mohr, et al.,                   :

               Defendants.        :

REPORT AND RECOMMENDATION

     This prisoner civil rights case, filed by William E. Smith, an inmate at the Chillicothe Correctional Institution, is before the Court to consider two motions to dismiss. For the following reasons, the Court will recommend that the motions to dismiss be granted.

I.  Background

     Mr. Smith has filed an original complaint with 81 pages of attached exhibits, an amended complaint incorporating by reference the allegations of his original complaint accompanied by a memorandum in support and 58 additional pages of exhibits, and a supplemental complaint. In his original complaint (Doc. 7), Mr. Smith names five defendants in the caption - Gary Mohr, Timothy Buchannon, Charlotte Jenkins, Dr. Kutys, and Correctional Officer Tara Smith. The original complaint, in the statement of the claim section, primarily alleges that Mr. Smith has been denied appropriate mental health care for his PTSD since his return to prison. According to the complaint, during his original incarceration, as a result of this condition, Mr. Smith was housed in a "cell only facilit[y]" under a psychiatric treatment plan. Since his return, however, he has been told that current institutional policy does not require that his PTSD be accommodated in this way. Consequently, he has been housed in an

"open-bay facility" and this has been detrimental to his mental health.  Mr. Smith also inserted three pages into the middle of his form complaint captioned as an introduction.  These pages include ten paragraphs setting forth claims under 42 U.S.C. §§1983 and 1986, 42 U.S.C. §12131 and 29 U.S.C. §794.a(§504).  In these paragraphs, Mr. Smith asserts generally that "various prison officials" failed or refused to supply him with legal copies and mailing thereby denying him meaningful access to the courts, the "arbitrary and capricious enforcement" of prison policy and the Ohio Administrative Code impeded his access to the law library "'chilling' his desire to gain access to the prison law library" and "stalling his legal course," his arbitrary transfer to a maximum security prison, a constitutionally flawed grievance system, due process and equal protection violations, and health hazards as a result of overcrowded conditions.

In his amended complaint (Doc. 11), Mr. Smith names four defendants in the caption - Gary Mohr, Timothy Buchannon, Charlotte Jenkins, and Dr. Kutys, but he names others in the body of the complaint.  The amended complaint, after asserting various general rights which Mr. Smith claims to enjoy under various provisions of the United States Constitution, identifies Mr. Mohr as the Director of ODRC, charged with the responsibility to make Department policy; Mr. Buchannon as the warden of the Noble Correctional Institution and as the person responsible for implementing ODRC policies at that institution; Ms. Hupp, who is not named in the caption, as an institutional librarian; Byron Beal, as a correctional officer at Noble; Ms. Jenkins as the warden of the Chillicothe Correctional Institution; Lt. Shoemaker as a correctional officer at Chillicothe; Tara Smith as a correctional officer at the same institution; and Dr. Kutys as a psychologist working under contract with the ODRC.

In the section of the complaint entitled "General

-2-

Allegations," Mr. Smith asserts that the policies and procedures of ODRC have violated his constitutional rights. He then makes more specific allegations, claiming that various defendants interfered with pending litigation, including a case in which he was to be a witness; that he was punished at Noble for trying to catch up on his litigation; that he was housed at Noble in an overcrowded dormitory and not offered suitable mental health treatment; that he was improperly placed in segregation; that he was exposed to asbestos and histoplasmosis at the Chillicothe institution; and that he was denied entry into a residential treatment program as well as adequate mental health treatment and treatment for an abdominal mass.

In a supplemental complaint (Doc. 24), Mr. Smith makes additional allegations, naming a new defendant (Nurse Schoonover) and asserting that she was or should have been aware that overcrowded conditions were detrimental to his mental health, yet she refused to provide him either with one-on-one counseling or a referral for treatment. He avers that she also threatened him with segregation if he continued to insist on mental health treatment and that she and Dr. Kutys treated his legitimate grievances as frivolous.

II. <u>The Motions to Dismiss</u>

Defendants Beal, Hupp, and Shoemaker - the only defendants who had been served at the time the first motion to dismiss was filed - moved on January 4, 2016 to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). Defendant Schoonover filed a similar motion on February 4, 2016. No other defendants have been served, apparently because Mr. Smith has not provided copies of the amended complaint and summons forms for those defendants. <u>See</u> Doc. 33. Mr. Smith has responded to both motions to dismiss.

The first motion to dismiss describes Mr. Smith's complaint as "long on claim but short on factual allegations" contending

-3-

that Mr. Smith has failed to meet applicable pleading standards. (Doc. 23, at 2). It then separates the complaint out into claims directed to these defendants about access to the courts and retaliation. As to the former, Defendants argue that the complaint does no more than recite that the three of them knew of Mr. Smith's pending litigation, took some action to "chill" his ability to proceed in those cases, and threatened him when he attempted to "catch up" on his pleadings. They point out that in order to plead a proper claim of denial of the right of access to the courts, an inmate must identify, in the complaint, what actually happened in his litigation as a result of the claimed interference - that is, he must "demonstrate prejudice to non-frivolous claims." (Doc. 23, at 6). As an alternative argument, they contend that even if Mr. Smith adequately pleaded some prejudice to non-frivolous claims which he was pursuing in his state court cases, his complaint does not say what any of these three defendants actually did beyond his vague claim that they threatened or harassed him in a way that made it harder for him to litigate.

Mr. Smith responds to this portion of the motion to dismiss by stating that the motion should be converted into a summary judgment motion pursuant and resolved under Fed.R.Civ.P. 56(c). He notes that none of the moving defendants submitted an affidavit or sworn statement to refute his allegations and also claims that his Eighth Amendment cause of action based upon conditions of confinement which disregard his mental health issues is directed to all of the defendants. He contends that under applicable law, he has a right to use legal assistance provided to inmates without interference or fear of retaliation and that "[a]ny reasonable jurist could conclude that the totality of punitive actions taken against Smith in the context of daily prison life engaged in legitimate litigation would and

-4-

could have been made to impede his accessibility to the courts ....." (Doc. 29, at 5). He says that the way in which the three named defendants enforce ODRC's policy about inmates' access to the courts includes a habit of imposing punishment or isolation on inmates who use the system. Finally, he describes his actual injury as the emotional distress he suffered while trying to pursue his state court litigation; the fact that he was refused credit for copying or mailing legal pleadings; and the defendants' refusal to give him extra time to work on his cases. He concludes by arguing that he need not have suffered actual injury in his state cases in order to state a valid claim for retaliation, and that the defendants did retaliate against him for pursuing his right of access to the courts. He points to his claim that he was placed in isolation simply for asking a corrections officer not to destroy his legal work - something he asserts was done or approved of by Defendant Shoemaker - as evidence of such retaliation.

In reply, defendants contend that Mr. Smith's response does not provide any new or relevant facts to support of either his access to the courts or retaliation claims. Further, they challenge Mr. Smith's request to convert the motion to a motion for summary judgment. Finally, they dispute Mr. Smith's position that they are not entitled to qualified immunity.

Nurse Schoonover also has moved to dismiss Mr. Smith's claims against her, contending that Mr. Smith has not alleged a claim under the Eighth Amendment for deliberate indifference to his serious medical needs. Specifically, she contends that Mr. Smith is unable to establish the subjective component of such a claim and has alleged nothing beyond a disagreement with the treatment he has received for his PTSD. She also contends that any claims against her in her official capacity are barred by the Eleventh Amendment and that she is entitled to qualified

-5-

immunity.

In response, Mr. Smith filed an 18-page reply with five pages of attached exhibits.  He raises arguments relating to due process, asserting his entitlement to the medical treatment he seeks under the terms of the ADA and the Rehabilitation Act, and challenging Nurse Schoonover's assertions that he has not sufficiently alleged facts to demonstrate her deliberate indifference to his serious medical needs.  In reply, Nurse Schoonover reiterates the arguments from her motion.

### III.  Legal Standard

Before setting forth the applicable legal standard, the Court will briefly address Mr. Smith's requests in response to both motions to dismiss that the Court convert the motions to motions for summary judgment. Typically, in deciding a motion to dismiss, the Court is limited to the allegations of the complaint and is not permitted to consider matters outside the pleadings. Leonard v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the United States & Canada, 2016 WL 319867, at *2 (S.D. Ohio Jan. 26, 2016) adopted and affirmed, 2016 WL 743435 (S.D. Ohio Feb. 23, 2016), citing Rondigo LLC v. Township of Richmond, 641 F.3d 673, 680 (6th Cir. 2011).  However, when a document is attached to the complaint and is integral to the plaintiff's claims, the Court may consider such document without converting a motion to dismiss to one for summary judgment.  Id., citing Burns v. United States, 542 F. App'x 461, 466 (6th Cir. 2013).  Similarly, "'[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider ... exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.'"  Id., quoting  Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008).

Here, Mr. Smith has attached exhibits to his original

-6-

complaint and submitted additional exhibits which he requests to
have made part of the record in connection with his amended
complaint.  Defendants have not provided any exhibits in
connection with their responses.  In light of this, the Court
sees no reason to convert the motions to dismiss to summary
judgment motions and will consider the motions under Fed.R.Civ.P.
12(b)(6).

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not
be granted if the complaint contains "enough facts to state a
claim to relief that is plausible on its face." Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 570 (2007).  All well-pleaded
factual allegations must be taken as true and be construed most
favorably toward the non-movant.  Scheuer v. Rhodes, 416 U.S. 232,
236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir.
2009).  Rule 8(a) admonishes the Court to look only for a "short
and plain statement of the claim," however, rather than requiring
the pleading of specific facts.  Erickson v. Pardus, 551 U.S. 89
(2007).

A 12(b)(6) motion to dismiss is directed solely to the
complaint and any exhibits attached to it. Roth Steel Products v.
Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983).  The
merits of the claims set forth in the complaint are not at issue
on a motion to dismiss for failure to state a claim.
Consequently, a complaint will be dismissed pursuant to Fed. R.
Civ. P. 12(b)(6) only if there is no law to support the claims
made, or if the facts alleged are insufficient to state a claim,
or if on the face of the complaint there is an insurmountable bar
to relief.  See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697,
702 (6th Cir. 1978).  Rule 12 (b)(6) must be read in conjunction
with Fed. R. Civ. P. 8(a) which provides that a pleading for
relief shall contain "a short and plain statement of the claim
showing that the pleader is entitled to relief."  5A Wright &
Miller, Federal Practice and Procedure § 1356 (1990).  The moving
party is entitled to relief only when the complaint fails to meet

-7-

this liberal standard.  Id.

On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  Id. (emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

Id. It is with these standards in mind that the motions to dismiss will be decided.

IV.  Analysis

A.  Defendants Hupp, Beal, and Shoemaker's Motion to Dismiss

i.  Mr. Smith's Claim for the Denial of Access to the Courts

Mr. Smith's original, amended and supplemental complaints contain extreme detail and evidence a familiarity with numerous constitutional concepts.  Turning first to Mr. Smith's claims against defendants Hupp, Beal, and Shoemaker, as they recognize, several of Mr. Smith's allegations suggest a violation of his right of access to the courts.  The allegations arise from alleged actions of defendants Hupp and Beal at NCI and Mr. Shoemaker at Chillicothe.  According to Mr. Smith's allegations, the conduct comprising the violations ranges from the denial of copying and mailing to the interference with his use of the law library, including the issuance of threats and various forms of retaliation, and his transfer to another prison where he was unable to access his legal documents.

It has long been recognized that inmates have a

constitutional right, grounded in the First Amendment, to access
the courts.  See Bounds v. Smith, 430 U.S. 817, 821 (1977) ("It
is now established beyond doubt that prisoners have a
constitutional right of access to the courts").  That right is
not, however, unlimited nor parallel to the right of access to
the courts enjoyed by non-incarcerated citizens.  Rather,
prisoners have a constitutional right to access the courts only
to present legal claims relating either to their convictions and
sentences or to the conditions of their confinement.  "Thus, a
prisoner's right to access the courts extends to direct appeals,
habeas corpus applications, and civil rights claims only."
Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999)
(describing this right as a "carefully bounded right" and not a
"generalized 'right to litigate,'" see id., quoting Lewis v.
Casey, 518 U.S. 343, 355 (1996)).

The restriction of the right of access to the courts to
these types of claims brings with it an additional requirement
relating to an inmate's standing to pursue a claim of denial of
access to the courts.  Because the right in question does not
confer on prisoners an unfettered right to pursue any and all
types of legal claims, in order for the right to be infringed,
there must be a relationship between the actions which any
particular inmate claims to be unconstitutional and that
particular inmate's ability to file or pursue either a direct
appeal, a collateral attack on a conviction or sentence, or a
civil rights action dealing with conditions of confinement.  In
Lewis v. Casey, the Supreme Court conceived of this limitation as
an issue of standing, holding that any inmate pursuing a claim
under Bounds v. Smith "must show actual injury."  The Court of
Appeals has explained that a prisoner "can only achieve standing
if he alleges a personal injury fairly traceable to a redressable
wrong committed against him."  Thadeus-X, 175 F.3d at 392.

-9-

Consequently, in order for an inmate to have standing to bring a claim under Bounds v. Smith for denial of access to the courts, that inmate must both allege and prove that the deficiencies about which he complains had an actual impact on his ability to pursue either an attack on his conviction or sentence, or on a civil rights action dealing with allegedly unconstitutional conditions of confinement. As explained by the Supreme Court in Christopher v. Harbury, 536 U.S. 403, 415 (2002):

> Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.

Because this issue is one of standing, which is a threshold issue to be addressed in any case brought in a federal court, it is the plaintiff's burden to allege, in the complaint, facts from which his or her standing might reasonably be inferred. As the Supreme Court has observed, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Christopher v. Harbury, 536 U.S. at 416. Further, the underlying claim must be non-frivolous. Hadix v Johnson, 182 F.3d 400, 405-406 (6th Cir. 1999). It is with these controlling legal principles in mind that the Court will consider whether Mr. Smith has succeeded in stating a claim for denial of the right of access to the courts. As explained below, the Court concludes that he has not.

As noted above, Mr. Smith has provided the Court significant detailed information in his filings. Despite this, however, Mr.

-10-

Smith's filings simply do not contain any allegation of actual
prejudice he suffered as a result of the conduct of defendants
Beal, Hupp, or Shoemaker sufficient to support an access to the
courts claim.  Examples of actual prejudice a court would expect
to see in this context include having a case dismissed, being
unable to file a complaint, and missing a court-imposed deadline.
Harbin-Bey v. Rutter, 420 F.3d 571, 578 (6th Cir. 2005); Walker
v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985).  The Court's
review of Mr. Smith's numerous exhibits does not reveal any such
examples.  The exhibits, to some extent, provide the Court with a
better understanding of the factual background underlying Mr.
Smith's access to the courts claim.  At the same time, they
demonstrate that, even assuming the defendants acted as Mr. Smith
asserts, he did not suffer the type of actual prejudice necessary
to support such a claim.

     Some of the exhibits attached to the original complaint
relate to pending federal litigation in West Virginia, including
an affidavit and an amendment to proposed findings and
recommendations issued by the West Virginia court on August 29,
2014.  Mr. Smith also attached several additional documents
relating to what appear to be three other pieces of litigation:
(1) a complaint seeking a writ of prohibition which Mr. Smith
filed against Judge James DeWeese in the Richland County Court of
Appeals on January 30, 2014, in Case No. 14CA8; (2) an appeal to
the Richland County Court of Appeals in Case No. 2014 CA 0015
filed on March 5, 2014; and (3) a state petition for a writ of
habeas corpus filed by Mr. Smith in the Noble County Court of
Appeals in Case No. 13-CA-407.

     Mr. Smith provided additional exhibits relating to these and
other legal matters in connection with his amended complaint.
These exhibits include an entry of dismissal in Case No. 15-92
filed in the Ohio Court of Claims dismissing that case without

prejudice at Mr. Smith's request; a sentencing judgment entry dated April 7, 1993 in Case No. 92 CR 626 from the Richland County Court of Common Pleas; a letter from the Office of Disciplinary Counsel of the Ohio Supreme Court relating to a grievance Mr. Smith filed concerning Judge DeWeese;  another judgment entry issued by the Richland County Court of Common Pleas on January 13, 1993, appointing counsel in Case No. 92-CR-626; an order signed by Judge James DeWeese on January 6, 1994 in Case No. 92CR626 granting Mr. Smith's motion for shock probation; a judgment entry filed in the Richland County Court of Appeals on October 28, 2013, dismissing Mr. Smith's amended petition for a writ of habeas corpus as moot because the action was dismissed on September 18, 2013; a sentencing entry filed in the Richland County Court of Common Pleas on February 4, 2014 in Case No. 09 CR 96; a second copy of Judge DeWeese's motion to dismiss Mr. Smith's application for a writ of prohibition; two nunc pro tunc entries issued by the Richland County Court of Appeals in Case No. 14CA8, one granting dismissal of Mr. Smith's writ of prohibition action; the State of Ohio's brief in opposition to Mr. Smith's application to reopen in Case No. 14-CA-15; and the opinion from the Richland County Court of Appeals in Case No. 14 CA 15 and judgment entry both dated September 12, 2014, affirming Mr. Smith's criminal conviction in Case No. 09 CR 96.

While Mr. Smith's exhibits relate to several distinct pieces of litigation, only some of them appear to be the type of proceedings to which the right of access to the courts could extend.  The West Virginia litigation appears to be a prisoner civil rights action.  The application to reopen in Case No. 14-CA-15, and the state habeas corpus action, Case No. 13 CA 407, relate to his conviction and sentence.  However, none of the information Mr. Smith provided regarding these cases suggests that he suffered any prejudice in these cases attributable to the

defendants' actions.

Rather, the information relied on by Mr. Smith demonstrates the following.  As of the filing of the complaint in this case, at least some of Mr. Smith's claims in his civil rights case had survived a summary judgment motion as indicated by an amended proposed findings and recommendations issued by the court on August 29, 2014.  Further, Mr. Smith's application to reopen his appeal in Case No. 14-CA-15 was considered by the appellate court but denied for lack of evidence of counsel's ineffectiveness. Additionally, Mr. Smith's attempted delayed appeal in his state habeas action, Case No. 13-CA-407 was rejected by the Ohio Supreme Court because the provision for delayed appeals was inapplicable to Mr. Smith's case and because he did not comply with court rules by submitting either the filing fee or an affidavit of indigence.

To the extent that Mr. Smith more specifically suggests that the actions of the defendants caused the delay of his appeal in the state habeas proceeding - either because he was transferred to another prison briefly for a court appearance or otherwise - this suggestion of the defendants' responsibility for delay is undercut by the judgment entry from the Noble County Court of Appeals.  This judgment entry indicates that the petition was dismissed on January 27, 2014, and that Mr. Smith filed a hand-written motion for leave on February 18, 2014.  If Mr. Smith was able to file such a motion on that date it seems implausible that the defendants' actions kept him from filing a timely appeal. Mr. Smith also was able to file his writ of prohibition during this same time period in late January, 2014.

Further, in his response to defendants' motion to dismiss directed to the issue of prejudice, Mr. Smith continues to speak in the most vague and general terms without any reference to a specific example of sufficient prejudice.  That is, he explains

-13-

his alleged injury only in these terms:

> Plaintiff's actual injury [<u>Lewis, supra</u>, 518 U.S. 343 (1996)] was first made in the infliction of great emotional distress while attempting to plead or defend in his state cases (see original complaint Exhibits Doc. 1-2 PAGEID 89-120).  Wherefrom the sadistic actions of Defendant's Hupp, Beal and Shoemaker (but not limited to) resulted in Smith becomming (sic) either punished or procedurally barred by Defendant Hupp's acting beyond the scope of DRC policy 59-LEG-01 and refusal to afford Smith credit for copying or mailing his legal pleadings or additional time to plead or defend in those actions even when space was available without being screamed, yelled at or threatened by her and officer Beal coupled with arbitrary conduct reports, at times relevant [to] Smith's pending actions and while Smith suffered from P.T.S.D. (See Doc 1-2 PAGEID 80-83).

In light of all of the above, at most, Mr. Smith's filings, taken together, suggest his disagreement with limitations on the use of the law library generally and perhaps more specifically as applied to him.  Such limitations generally are not themselves unconstitutional unless they result in injury to a pending or contemplated legal claim.  <u>Walker v. Mintzes</u>, 771 F.2d 920, 931-32 (6th Cir. 1985) ("Prison regulations [may] reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of leg[al] papers so long as the regulations do not frustrate access to the courts").  Further, to the extent Mr. Smith complains that he was not extended credit for copying or mailing, the right of access to the courts does not include free and unlimited access to photocopies or postal expenses.  <u>Glover v. Grant County Detention Center</u>, 2010 WL 2804054, *6 (E.D. Ky. July 15, 2010); <u>Courtemanche v. Gregels</u>, 79 Fed.App'x 115, 117 (6th Cir. 2003).  Finally, not only are Mr. Smith's repeated allegations of emotional distress insufficient to establish an actual injury for his access to the courts claims, they are insufficient to state any independent claim

-14-

against these defendants. Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Carter v. Kentucky Dep't of Corr., 2015 WL 5313550, *3 (W.D. Ky. Sept. 9, 2015), quoting 28 U.S.C. §1997e(e).

### ii. Mr. Smith's Retaliation Claims

Mr. Smith also uses terms suggesting that defendants retaliated against him for the exercise of his First Amendment rights. Mr. Smith's allegations relating to such a claim are sparse, aside from multiple uses of the word "retaliation." With respect to defendants Beal and Hupp, he states that, after he met with the Institutional Inspector about the issue of meaningful access to the courts, he was met with "increased anger and hatred and retaliation ... (records reflect) from October 2013 thru November, 2014, while initiating arbitrary conduct reports ... by Beal increased."

With respect to Mr. Shoemaker, Mr. Smith states generally that he was threatened with retaliatory punishment if he continued filing grievances relating to conditions of confinement and that Lt. Shoemaker took him to the hole after he either filed grievances against Tara Smith or after he requested that she not destroy his legal materials. He also indicates that he appeared before the Rules Infraction Board and that he never appealed those decisions out of fear of further retaliation.

There is no question that retaliation for the exercise of constitutional rights is itself a violation of the Constitution. To state a retaliation claim, a plaintiff must allege three elements: (1) that he or she was engaged in protected conduct; (2) an adverse action was taken against him or her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least

-15-

in part by the plaintiff's protected conduct.  Thaddeus-X v.
Blatter, 175 F.3d 378, 394 (6th Cir. 1999).  Retaliation claims
must include a "chronology of events from which retaliation may
plausibly be inferred."  Ishaaq v. Compton, 900 F.Supp. 935 (W.D.
Tenn. 1995)(quoting Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th
Cir. 1988)).

     The Court will examine the retaliation claim against
defendants Beal and Hupp before turning the claim against Mr.
Shoemaker.  With respect to Mr. Beal and Ms. Hupp, the crux of
Mr. Smith's claim appears to be that he was retaliated against by
these defendants after speaking to the institutional inspector
about his access to the courts.  The retaliation appears to have
taken the form of anger, hatred and arbitrary conduct reports
issued by Mr. Beal.  A verbal complaint to a prison official may
be considered protected conduct.  Moorer v. Booker, 2010 WL
5090111, *5 (E.D. Mich. Aug. 31, 2010).  However, the terms anger
and hatred do not describe any adverse action taken by defendants
Hupp and Beal.  To the extent that Mr. Smith might be suggesting
verbal harassment, an inmate has no right to be free from verbal
abuse, and verbal harassment does not state a claim for
retaliation.  Carney v. Craven, 40 Fed. Appx. 48, 50 (6th Cir.
2002).

     With respect to Mr. Beal's issuance of conduct reports, Mr.
Smith merely describes these conduct reports as arbitrary.  He
does not suggest that these reports were false nor does he
explain what consequences he suffered as a result of these
conduct reports.  Certainly, false disciplinary reports have been
found to constitute adverse action, see Smith v. Craven, 61
Fed.Appx. 159, 162 (6th Cir. 2003), but that is not the
allegation here.  Mr. Smith has attached copies of two conduct
reports issued by Mr. Beal relating to Mr. Smith's use of the law
library, but these documents do not provide any additional

-16-

insight into whether the issuance of these conduct reports can be viewed as constituting adverse action in response to Mr. Smith's meeting with the institutional inspector.  Absent more specific information from Mr. Smith, the Court cannot conclude that he has stated a claim for retaliation against defendants Beal or Hupp.

Turning to the retaliation claim against Mr. Shoemaker, part of this claim appears to generally allege retaliation for the filing of grievances.  "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000).  Consequently, to the extent that Mr. Smith alleges that he filed grievances, he has alleged that he was engaged in protected conduct.

With respect to the second element of a retaliation claim, adverse action taken against him, however, Mr. Smith's allegations again lack necessary detail.  For example, Mr. Smith suggests generally that Mr. Shoemaker threatened retaliatory punishment for filing grievances.  While the Court of Appeals has recognized that a mere threat may be actionable if it would otherwise meet the standard of deterring a person of ordinary firmness from engaging in a protected activity, see Pasley v. Conerly, 345 Fed.Appx. 981, 985 (6th Cir. 2009), Mr. Smith provides no explanation of the nature of the alleged threats made by Mr. Shoemaker.  Without this information, the Court cannot conclude that the threats alleged are sufficient to constitute an adverse action.  Further, looking to the third element of a retaliation claim, with respect to this broad allegation, Mr. Smith does not provide any information to allow the Court to find any connection between any threats made by Mr. Shoemaker and any specific grievance.

Mr. Smith also appears to make a second, slightly more specific allegation of retaliation directed to Mr. Shoemaker -

-17-

that Mr. Shoemaker placed him in the hole either after Mr. Smith filed grievances against Ms. Smith for acting vindictive or after he asked her not to dispose of his legal papers. This allegation, while somewhat more detailed, does not fare much better. While placement in segregation has been found to constitute an adverse action, see Hill v. Lappin, 630 F.3d 468 (6th Cir. 2010), Mr. Smith has provided nothing beyond conclusory assertions to suggest that Mr. Shoemaker's placing Mr. Smith in segregation resulted from Mr. Smith's pursuit of any grievances against, or interactions with, Ms. Smith. To the contrary, Mr. Smith's allegations state that he was placed in segregation based on his "disrespect" of Ms. Smith and suggest that he appeared before the Rules Infraction Board and chose not to appeal its decision. Stated another way, Mr. Smith has not alleged facts indicating a causal connection sufficient to satisfy the third element of a retaliation claim against Mr. Shoemaker.

To the extent that Mr. Smith suggests he appeared before the RIB in connection with his issues involving Ms. Smith, the Court of Appeals has recognized that "[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" Jackson v. Madery, 158 Fed.Appx. 656, 662 (6th Cir. 2005), quoting Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994). Further, included in Mr. Smith's exhibits to his amended complaint is an informal complaint resolution form dated March 10, 2015, in which he complains about Ms. Smith's "isolationist demeanor" and states that she enforces prison regulations with "hatred, ill will and revenge." In the "Action Taken" portion of this form, the staff member responding to this grievance stated only "What is your complaint?" Filing frivolous grievances is not protected conduct. Hill, 630 F.3d at 472. Without any more specific facts to support Mr. Smith's bare allegation of Mr. Shoemaker's

-18-

retaliation, the Court cannot conclude that Mr. Smith has stated a claim sufficient to survive the motion to dismiss.

ii. <u>Mr. Smith's Additional Claims</u>

Mr. Smith also intermingles allegations relating to due process violations with his access to the courts claim. These allegations are not clear as either directed to these defendants or more generally. In some of his allegations, he makes reference to a property interest created by state guidelines and policies and specifically R.C. 111.15. He also suggests that he was deprived of procedural due process in connection with his RIB hearing because "the punishment had already been rendered." This latter allegation appears directed to Mr. Shoemaker.

To establish a procedural due process violation, a plaintiff must show that a liberty or property interest is at stake. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005). As a result, a due process analysis requires two inquiries - whether a liberty or property interest exists which has been interfered with by the State and whether the procedures surrounding the deprivation of that interest were constitutionally sufficient. <u>Ky Dep't of Coms. v. Thompson</u>, 490 U.S. 454, 460 (1989). Stated another way, "the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." <u>Pickelhaupt v. Jackson</u>, 364 Fed. Appx. 221, 224 (6th Cir. 2010).

Here, Mr. Smith has not alleged facts sufficient to demonstrate the nature of any property interest. R.C. 111.15, which Mr. Smith cites as a specific source of his property interest, does not appear applicable to him. Because Mr. Smith has not sufficiently identified a property interest, he has not alleged a claim for a due process violation.

Further, to the extent that Mr. Smith is contending that his placement in segregation prior to a hearing violated his due process rights, he has not stated a claim. A prison disciplinary

-19-

proceeding does not give rise to a protected liberty interest
unless it affects the duration of the prisoner's confinement or
the restrictions impose an 'atypical and significant hardship."
Sandin v. Conner, 515 U.S.472, 484 (1995).  Placement in
administrative segregation without a hearing does not rise to the
level of such a hardship.  Joseph v. Curtin, 410 Fed.Appx. 865,
867-868 (6th Cir. 2010).  Rather, "[a]dministrative segregation
'is the sort of confinement that inmates should reasonably
anticipate receiving at some point in their incarceration.'"  Id.,
quoting Hewitt v. Helms, 459 U.S. 460 (1983).  Consequently, the
issue for the Court in considering Mr. Smith's various filings is
whether he has alleged that his administrative segregation has
"imposed an 'atypical and significant' hardship on him 'in
relation to the ordinary incidents of prison life.'"  Jones v.
Baker, 155 F.3d 810, 812 (6th Cir. 1998), quoting Sandin v.
Conner, 515 U.S. at 484.

     Mr. Smith's filings are replete with the conclusory
allegation that he has suffered an atypical and significant
hardship.  What is missing from Mr. Smith's complaints, however,
are detailed allegations suggesting the nature of this hardship
sufficient to assert a due process claim.  Generally, the Court
would expect to see at least some reference to either the nature
of the segregation imposed or the length of Mr. Smith's stay in
segregation.  The nature and duration of an inmate's stay in
segregation are two factors considered by the Court in evaluating
whether an atypical and significant hardship has been alleged.
Joseph v. Curtin, 410 Fed.Appx. at 867-68, citing Harden-Bey v.
Rutter, 524 F.3d 789, 795 (6th Cir. 2008).  "Simply disagreeing
with being placed in administrative segregation does not make it
"'atypical and significant.'"  Id., quoting Harden-Bey, at 796.
     In Sandin, the Supreme Court concluded that 30 days in
disciplinary segregation did not constitute an atypical and

significant hardship.  Further, the Court of Appeals has held
that administrative segregation alone does not involve an
atypical and significant hardship, but that an indefinite
placement in administrative segregation might.  <u>Harden-Bey</u>, 524
F.3d at 795.

The only indication of the length of Mr. Smith's stay in
segregation is found in an informal complaint resolution form
dated April 16, 2015, and submitted as an exhibit with Mr.
Smith's amended complaint.  This document states that he was
placed in isolation for twelve days before his RIB hearing.
Based on the precedent set forth above, this length of stay,
without more detailed information, is insufficient to state a due
process claim.  <u>See</u>, <u>e.g</u>., <u>Hursey v. Anderson</u>, 2015 WL 7282507,
*5 (W.D. Mich. Nov. 16, 2015) ("Plaintiff's allegations that he
was improperly kept in segregation for 13 days does not
constitute an atypical and significant hardship").  Because Mr.
Smith has failed to provide any information to explain why his
alleged time in segregation was 'atypical and significant,' he
has failed to state a due process claim to the extent he is
attempting to do so against Mr. Shoemaker.

> B.  <u>Defendant Schoonover's Motion to Dismiss</u>

Nurse Schoonover has moved to dismiss Mr. Smith's claims
against her on grounds that he has failed to allege her
deliberate indifference to his serious medical need.  As
explained below, the Court agrees.

To establish an Eighth Amendment violation, a prisoner
must show that he or she has a serious medical condition and
that the defendants displayed a deliberate indifference to
his or her health.  <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976);
<u>Wilson v. Seiter</u>, 501 U.S. 294 (1991).  This formulation has both
a subjective and an objective component.  Objectively, the
medical condition at issue must be "serious" as opposed to
"trivial," "minor," or "insubstantial."  Subjectively, the

defendants accused of violating the Eighth Amendment must have
acted with a state of mind that can accurately described as
"deliberate indifference."  Each of these components requires
some elaboration.

It is not always easy to distinguish serious medical
conditions from those that are not sufficiently substantial to
implicate the Constitutional prohibition against cruel and
unusual punishment, and the facts concerning the seriousness of
an inmate's condition are frequently in dispute.  In evaluating
such claims, courts have given weight to a variety of factors,
including whether the condition is one that a doctor or other
health care professional would find worthy of treatment, whether
it significantly affects everyday activities, and whether it
causes (or, if left untreated, has the potential to cause)
chronic and substantial pain.  See Chance v. Armstrong, 143 F.3d
688, 702-03 (2d Cir. 1998); see also Harrington v. Grayson, 811
F.Supp. 1221 (E.D. Mich. 1993)(focusing on the severity of the
condition, the potential for harm if treatment is delayed, and
whether such a delay actually caused additional harm).

As to the subjective element, in Farmer v. Brennan, 511 U.S.
825, 839 (1994), the Court adopted "subjective recklessness as
used in the criminal law" as the appropriate definition for
deliberate indifference. It held that "a prison official cannot
be held liable under the Eighth Amendment for denying an inmate
humane conditions of confinement unless the official knows of and
disregards an excessive risk to inmate health or safety. . . ."
Id. at 837.  Officials must be aware of facts from which they
could conclude that a substantial risk exists and must actually
draw that conclusion.  Id.  Prison officials who know of a
substantial risk to the health or safety of an inmate are free
from liability if "they responded reasonably to the risk, even if
the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be
premised on deliberate indifference, mere negligence by a

-22-

prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994).

In applying these standards to Mr. Smith's allegations, the Court notes that Ms. Schoonover does not argue that Mr. Smith's PTSD is not a serious medical condition.  Consequently, the Court's focus will be limited to whether Mr. Smith has sufficiently pled Nurse Schoonover's deliberate indifference to his PTSD.

As with Mr. Smith's original and amended complaints, his supplemental complaint directed to Nurse Schoonover contains numerous conclusory allegations and demonstrates great familiarity with certain constitutional concepts but does not provide much meaningful detail.  What is clear from Mr. Smith's pleadings is that he has been seen by Nurse Schoonover and Dr. Kutys for his PTSD but that, in his view, they have failed to make appropriate referrals, provide one-on-one counseling, or place him in the therapeutic environment of his choice.  Rather, they have recommended a "chemical cure," which he has chosen to decline because he prefers not to be sedated.  He also suggests that they have offered a "segregation cell" as an available therapeutic environment, but he challenges whether such a recommendation is a proper discharge of their duties.

The documentation attached to Mr. Smith's original complaint sheds some further light on Mr. Smith's factual allegations. According to a disposition of grievance dated March 24, 2015, Mr. Smith was seen by Dr. Kutys and Dr. Kutys agrees that he suffers with PTSD.  However, Mr. Smith's PTSD condition does not qualify

him for residential accommodations under the applicable mental health guidelines.  Consequently, Mr. Smith has been offered individual programming, group programming, and medication management.  This document confirms Mr. Smith's allegation that he has rejected recommendations to manage his PTSD with medication.

Taking all of this into account, Mr. Smith does not assert that he has been denied medical treatment for his PTSD in violation of the Eighth Amendment.  Rather, the focus of his complaint is that he disagrees with the treatment recommendations proposed.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." Graham ex rel. Estate of Graham v. County of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004), quoting Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976).  'A "difference of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do[es] not state an Eighth Amendment claim.'"  Booth v. Kilaru, 2014 WL 3891631, at *3 (E.D. Mich. Aug. 8, 2014), aff'd (May 11, 2015), quoting Smith v. Sator, 102 F. App'x 907, 909 (6th Cir. 2004).  An inmate who is treated but disagrees with the treatment fails to state an Eighth Amendment claim.  Id.  Consequently, the Court will recommend that Mr. Smith's Eighth Amendment claim against Nurse Schoonover be dismissed.

For these same reasons, to the extent Mr. Smith intends his complaints to be read as asserting an Eighth Amendment claim for the denial of medical care against all defendants, which for purposes of this order would include defendants Beal, Hupp, and Shoemaker, he has failed to state a claim.

Finally, the Court notes that, to the extent Mr. Smith has summarily alleged the denial of medical treatment for a liver condition, he has failed to allege sufficient facts supporting the plausibility of this claim.  In order to get past the

pleading stage, Mr. Smith must provide a sufficient description of both the nature of his liver condition and any efforts he has made to seek treatment to address it.  Similarly, looking to the other allegations of Mr. Smith's supplemental complaint directed to Nurse Schoonover, including suggestions of retaliation or due process violations, Mr. Smith again has provided only conclusory allegations and legal conclusions.  Without more specific information, he has failed to state a claim for such violations. Consequently, the Court will recommend that Nurse Schoonover's motion to dismiss be granted.

C . <u>Remaining Issues</u>

The Court notes that Mr. Smith has indicated his intention to withdraw claims directed to all defendants in their official capacities. <u>See</u> Supplemental Complaint, Doc. 24, p.8.  The Court construes the withdrawal of these claims as also directed to any ADA and Rehabilitation Act claims Mr. Smith's filings can be construed as asserting against Nurse Schoonover.  This is so because, to the extent that his filings can be read as asserting claims under these statutes, they do not allow suits against government officials in their individual capacities.  <u>Lee v. Michigan Parole Bd.</u>, 104 Fed.Appx. 490, 493 (6th Cir. 2004) ("neither the ADA nor the RA impose liability upon individuals. 29 U.S.C. §794(b)(RA); 42 U.S.C. §12131(1)(ADA)").  Consequently, the Court did not consider any issues related to these claims. Further, Mr. Smith withdrew his request for preliminary injunctive relief in both his supplemental complaint (Doc. 24) and his response to the motion to dismiss filed by defendants Hupp, Beal, and Shoemaker (Doc. 29).  Consequently, the Court will not consider this motion.

Finally, the Court notes that Mr. Smith has never completed service of process on several of the defendants because he has not provided enough service copies of any of his complaints.  By

-25-

order dated October 20, 2015 (Doc. 14), the Court denied Mr.
Smith's request to be excused from submitting the necessary
number of copies and directed Mr. Smith to file the appropriate
service documents within 21 days. The Court also advised Mr.
Smith that his failure to submit proper service materials would
result in the dismissal of these defendants without prejudice
pursuant to Rule 4(m). By order dated October 27, 2015 (Doc.
16), the Court directed the Clerk to provide Mr. Smith with a
copy of the amended complaint to allow him to make service
copies. In response to these orders, Mr Smith submitted service
documents for defendants Beal, Hupp, and Shoemaker. In an order
dated December 21, 2015 (Doc. 22), granting Mr. Smith's motion
to file a supplemental complaint, the Court again directed him to
provide service documents within 30 days. In response to this
order, Mr. Smith provided service documents for Nurse Schoonover.

At the time Mr. Smith filed his original complaint on May
13, 2015, Rule 4(m) provided:

> If a defendant is not served within 120
> days after the complaint is filed,
> the court – on motion or on its own
> after notice to the plaintiff -
> must dismiss the action without prejudice
> against that defendant or order that service
> be made within a specified time. But if the
> plaintiff shows good cause for the failure,
> the court must extend the time for service
> for an appropriate period.

Because Mr. Smith has failed to show good cause why service was
not made upon the remaining defendants within 120 days, the Court
will recommend that all claims against Gary Mohr, Timothy
Buchannon, Charlotte Jenkins, Dr. Kutys, and Correctional Officer
Tara Smith be dismissed without prejudice pursuant to Fed. R.
Civ. P. 4(m).

V. Recommendation

For the reasons stated above, it is recommended that the

-26-

motions to dismiss (Docs. 23 and 32) be granted.  It is further recommended that all claims against Gary Mohr, Timothy Buchannon, Charlotte Jenkins, Dr. Kutys, and Correctional Officer Tara Smith be dismissed without prejudice pursuant to Rule 4(m).

<u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de</u> <u>novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de</u> <u>novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge